May Term, 1853.

McCARTY
v.
PRUETT.

(1) *Ante*, p. 206.

---

## McCARTY and Others *v.* PRUETT.

*A.* sold and conveyed to *B.* and *C.* a tract of land and took their note for part of the purchase-money. Afterwards, and before the note became due, he sent an agent to collect it. Upon the proposal of *B.*, the agent agreed to take the individual note of *B.*, with an extension of the time of payment, for a part of his half of the note, upon his paying in hand the residue of such half. The money was thus paid and the note taken, and the agent thereupon entered a credit on the original note for one-half thereof. The land afterwards passed into the hands of *D.*, an innocent purchaser, for a valuable consideration, without notice of the circumstances under which the credit was made, or the individual note of *B.* executed. *A.* received the note of *B.*, acquiesced for several years in the arrangement made by his agent, and did not disapprove thereof; but afterwards filed his bill to enforce his lien, as a vendor, against the land in the hands of *D.*, for the non-payment of the individual note of *B.* *Held*, that as to *D.*, at least, *A.* must be held to have ratified the act of his agent, and that the credit entered on the original note by the agent must be treated as a payment, and that the individual note of *B.* must be regarded simply as given for money loaned.

A vendor's lien for unpaid purchase-money follows the land in the hands of a purchaser from his vendee with notice that part of the purchase-money is unpaid; but the burden of proof is on the vendor.

Monday, June 6.

APPEAL from the *Franklin* Circuit Court.

ROACHE, J.—*Pruett* filed a bill in chancery to enforce his lien upon land sold by him, for the balance of the purchase-money. The material allegations of the bill are as follows:

That on the 16th of *August*, 1839, *Pruett* sold and con-

veyed the land to one *Barwick* and *W. M. McCarty* for 2,000 dollars, of which sum they paid a portion, and gave their joint note for the residue, 1,150 dollars, due *October* 1, 1842. That on the 29th day of *June*, 1840, *Barwick* and *McCarty* sold the land to one *Samuel White*, and took his notes for the whole amount of the purchase-money, secured by a mortgage. *White* never paid any of the purchase-money, and afterwards absconded to parts unknown. Shortly after the sale to *Barwick* and *McCarty*, *Pruett* removed to *Missouri*, where he has resided ever since. In the summer of 1841, he sent one *Willis Moor* from *Missouri* to collect the note of 1,150 dollars, as his agent. *Barwick* proposed to *Moor* that if he would accept the individual note of said *Barwick* for 200 dollars, and extend the time of payment on it to *March* 1, 1843, he would pay the balance of his half of the note in cash, which *Moor*, "as such agent, agreed to do." Upon this agreement, *Barwick* executed a promissory note dated *August* 31, 1841, for 200 dollars, payable to the said *Willis Moor*, *March* 1, 1843, and paid the residue of his half of the 1,150 dollar note in cash. *Moor*, in consideration of the cash and the 200 dollar note, entered a credit on the original note, for the one-half thereof. Immediately on *Moor's* return to the state of *Missouri*, he delivered the 200 dollar note to *Pruett*, as its rightful owner. At the *February* term, 1843, of the *Franklin* Circuit Court, he recovered a judgment against *Barwick* and *McCarty* for 528 dollars and 50 cents, being the balance due on the 1,150 dollar note, after deducting the credits indorsed thereon.

That on the ———— day of ————, 1843, said *W. M. McCarty* transferred and assigned to one *Enoch McCarty* his interest in the *White* notes and mortgage, and attempted to convey the land with intent to defraud *Pruett*.

That *Barwick* becoming insolvent, on the 30th day of *June*, 1842, attempted to convey his interest in the premises to *George Holland* and *John M. Johnson*. *Johnson* conveyed his interest by quit-claim deed to *Holland*, and *Holland* to the said *Enoch McCarty*, who claims to be the owner and holds possession by virtue of said several con-

veyances, and had received rents of the value of 1,000 dollars.

The bill further alleges that *Barwick*, *W. M. McCarty*, *White*, *Johnson*, and *Holland*, all had full knowledge of the existence and nature of his equitable lien, and charges them with full notice prior to the dates of their respective purchases.

The prayer of the bill is, that the 200 dollar note may be declared to be a lien upon the land, on the ground that it was an unpaid balance of the purchase-money. *White*, *Barwick*, *W. M. McCarty*, and *E. McCarty*, are made defendants. *White* and *Barwick* made default. The *McCartys* filed separate answers under oath.

*W. M. McCarty* denies that he knew of the existence of the lien at the time he sold to his father, *E. McCarty*. He alleges that he had heard that *Barwick* had paid his half of the note—he did not inquire nor know how, or in what way, but found it credited on the note—and in making the sale to his father, arranged with him to pay the other half, being his part of the note, which he has since done. He denies that he ever knew what was the consideration of the 200 dollar note, or the amount, until it was filed in this suit. He alleges that *Barwick* was solvent at the maturity of the 1,150 dollar note, but had become insolvent before the maturity of the 200 dollar note, and insists that the extension of time releases him from all liability.

*W. M. McCarty* also filed a cross bill, making *Pruett* and *Holland* defendants, setting up that *Pruett*, by taking the 200 dollar note and crediting that sum upon the note for 1,150 dollars, had waived his lien, and that *White*, *Holland*, *Johnson* and *E. McCarty* were *bona fide* purchasers, without notice of *Pruett's* equity. *Pruett* answered the cross bill, denying that he had intended to or did abandon his lien on the land, admitting that *Moor* acted as his agent in the transaction, but denying that he had authority to waive his lien.

*Holland* answered under oath, denying notice, both at the time of his purchase and of his sale to *E. McCarty*,

and asserts that the whole transaction, so far as he was concerned, was *bona fide*.

These are all the pleadings having any bearing on the questions raised in the case.

Depositions were taken and the cause went to a hearing, which resulted in a decree for the amount due on the 200 dollar note, and declaring it a lien upon the land, and in case of default in the payment of the decree, ordering a sale, &c.

The appellants insist that this decree is erroneous, on two grounds:

1. Because *Pruett*, through his agent, *Moor*, waived his lien by taking the note of *Barwick* for 200 dollars, and extending the time of payment, and entering a credit of that amount on the original note.

2. Because it is not shown that either *Holland, Johnson*, or *E. McCarty* had notice of the existence of the lien at the dates of their respective purchases.

The first question to be settled is, whether *Pruett* is bound by the acts of his agent, *Moor*, in the arrangement made with *Barwick*, which resulted in entering the credit on the original note; or, in other words, whether the former is responsible for the legal consequences attaching to the acts of his agent.

The facts, as established by the bill and depositions, are these: *Pruett* employed *Moor* as his agent, and sent him to *Indiana* to collect the 1,150 dollar note. *Moor* called on *Barwick* in *McCarty's* absence and without his knowledge, and agreed to take the 200 dollar note in controversy, payable to himself, extending the time of payment some five months, and indorsing on the original note a credit, in general terms, for the said *Barwick's* half thereof, including the note for 200 dollars in the credit. Immediately on his return to *Missouri*, he delivered both notes to *Pruett*. There is no evidence tending to show that *Pruett* expressed any disapprobation of the arrangement from that time until about the commencement of this suit, a period of about four years. There is nothing in the whole case to show that he ever at any time, be-

fore the bringing of the present suit, in any mode disavowed the arrangement made by *Moor*. He was fully informed of the whole transaction shortly after its completion, had possession of the notes, brought a suit on one of them, and so far as is shown, made no attempt to repudiate *Moor's* acts until after *Barwick* became insolvent. Admitting that *Moor* exceeded his authority, *Pruett* afterwards, with a full knowledge of all the facts, by his acquiescence fully sanctioned them and made them his own. They are to be treated as the acts of *Pruett* himself. He must be held responsible for all their legal consequences.

In this view of the case, it is unnecessary to decide the question insisted on by the appellants, as to whether the taking of the new note of *Barwick* was a waiver of his lien. That question is not involved. The indorsement upon the note was *prima facie* evidence of payment of that amount of the debt, and consequently a discharge, instead of a waiver, of the lien incident to it, *pro tanto*. It therefore rests upon *Pruett* to show that the legal consequences flowing from an actual payment shall not attach to his acknowledgment of a payment; and this the more especially, as the rights of third parties have now become involved. In this he has utterly failed.

The arrangement with *Barwick* was made without the privity or consent of *W. M. McCarty*, the other payor of the original note. By that arrangement, the 200 dollar note in controversy was taken, signed by *Barwick* alone, extending the time of payment some five months beyond the maturity of the original note, and crediting it upon the original note as an absolute payment. We can regard it in no other light, so far as the rights of all third parties are involved, than as an actual payment of that amount, and a loaning of the same sum to *Barwick*. The adoption of a different view of the case would be assisting *Pruett* to perpetrate a fraud upon all the parties having an interest in the land, as well as upon *W. M. McCarty*, the joint payor of the original note. The sale was made by *W. M.* to *E. McCarty* some months after

the giving of the 200 dollar note, and after the trial which resulted in the judgment for the balance due on the original note. There is no proof that on that trial *Pruett* claimed or pretended that any more of the purchase-money was due, than the balance on the 1,150 dollar note, after deducting the payments indorsed. It is fair to presume that *E. McCarty* made his contract with reference to these facts, the evidence of which was furnished by *Pruett* himself.

From the evidence of payment furnished by *Pruett* himself by his indorsement on the note, he would very rationally conclude that when he paid the judgment for the balance of the original note (which he is proved to have since done) his land was freed from the incumbrance of the vendor's lien. This was the fair legal inference from *Pruett's* acts. After a silence of four years, he cannot be permitted to deny or evade the legitimate consequences of those acts, and subject third parties who may have made contracts in the belief that the indorsement was what on its face it purported to be, a payment.

The indorsement on the original note, under all the circumstances, must therefore be treated, so far as all third parties are concerned, as an absolute payment. The 200 dollar note embraced in that credit, was not for an unpaid portion of the purchase-money, and was consequently not a lien upon the land, at least as against the defendants below.

From what has been already said, it will be perceived that we regard *E. McCarty* in the light of a *bona fide* purchaser without notice.

The lien of a vendor of real estate for the unpaid purchase-money, follows the land into the hands of a purchaser from his vendee, provided he have notice of the lien—that is to say, have notice that a portion of the purchase-money remains unpaid. But the burden of proof is on the vendor.

The answers of *Holland* and *Johnson*, who bought *Barwick's* interest, and of *E. McCarty*, who now owns the whole tract, all deny that they had any knowledge of

the lien, under oath.   The evidence is not sufficient to show that they had.   As to *Holland,* there is no proof at all.   One witness testified that he showed the note to *Johnson* before it was due, and shortly before *Barwick* went away, with the view of employing him as an attorney to collect it; but on his cross examination he says, "he did not tell him anything about the consideration of the note, when or how it was given."   It was also proved by one witness, that at some time, but whether before or after his purchase does not sufficiently appear, *E. McCarty* was apprised of the existence of the 200 dollar note, but the witness could not say whether he was informed or knew for what the note was given.   This was no notice of *Pruett's* equity.   The proof is, that these defendants had notice of the existence of a note for 200 dollars, payable not to *Pruett,* the vendor of the land, but to one *Moor,* due not from the vendees, *Barwick* and *McCarty,* but from one of them alone.   No one would be led to suspect, even from an inspection of the note, without the explanation, which is not shown to have been given, that *Pruett* had any connection with the note.   It was not even sufficient to put a buyer on inquiry.

*Per Curiam.*—The decree is reversed with costs.   Cause remanded with instructions to the Circuit Court to dismiss the bill.

*G. Holland,* for the appellants.

*J. A. Matson,* for the appellee.